FILED
2015 Oct-13 PM 03:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
(WESTERN DIVISION)

| | |
|---|---|
| KATHERINE REED,<br><br>PLAINTIFF,<br><br>v.<br><br>LIFE INSURANCE COMPANY OF<br>NORTH AMERICA,<br><br>DEFENDANT. | )<br>)<br>)<br>)<br>)<br>)  CIVIL ACTION NO. _____<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Comes now the Plaintiff, Katherine Reed, and in support of her complaint says as follows:

### FACTS KNOWN TO ALL COUNTS

1. The Plaintiff, Katherine Reed, was at all material times a Brand Visual/Merchandise Expert with her employer Gap, Inc. Gap, Inc. does business throughout Alabama by agent or otherwise at all material times.

2. While the Plaintiff was employed with Gap, Inc. the Plaintiff was covered by certain employee benefits including a long term disability benefit under plan policy number FLK0980039. This long term disability plan was underwritten by Life Insurance Company of North America (hereafter LINA).

3. LINA is, upon information and belief, a foreign corporation which does business by agent or otherwise throughout the state of Alabama.

4. As a management-level brand visual expert the Plaintiff was required to perform her occupation with a high degree of cognitive function and with the physical exertion and stamina necessary to complete job requirements.

5. On November 1, 2009, the Plaintiff cut down a large agave plant (century plant) in her yard, and was sprayed across her legs with sap from the plant. Following this exposure she began experiencing a severe, burning pain and rash on her legs. She attempted to return to work but continued to experience severe pain. She sought treatment from a dermatologist and a skin biopsy revealed the presence of multiple calcium oxalate crystals. She was prescribed corticosteroids to which she had a severe adverse reaction. Her last day worked was November 16, 2009.

6. In the months following the toxic agave exposure, the Plaintiff continued to experience neuropathic pain. She experienced severe joint pain and fatigue, and was diagnosed with fibromyalgia, chronic fatigue syndrome, chronic pain, secondary adrenal insufficiency due to pituitary insufficiency, hypothyroid, dysmetabolic syndrome, hypothyroid, hypotension, diabetes mellitus II and narcolepsy related to medications and underlying medical conditions. The Plaintiff could not maintain the level of cognitive function and stamina necessary in order to work full time.

7. As a result of her medical problems the Plaintiff filed a claim for short term

and the claim was paid. When it appeared her medical conditions would continue, the Plaintiff then filed a claim for long term disability benefits with LINA.

8. According to the plan the definition of disability required the Plaintiff to show that "solely because of an injury or sickness, he or she is 1) unable to perform the material duties of his or her regular occupation or a Qualified Alternative; and 2) unable to earn 80% of his or her indexed earnings from working in his or her regular occupation."

9. After the first twenty-four months the definition of disability changed such that the Plaintiff was required to show that "…solely due to injury or sickness, he or she is 1) unable to perform the material duties of any occupation for which he or she is or may reasonably become qualified based on education, training or experience and 2) unable to earn 60% or more of his indexed earnings".

10. LINA found the Plaintiff disabled as to her own occupation. However, just six months after approving the claim, the Defendant terminated the claim without proof of any improvement in the Plaintiff's condition. The Plaintiff appealed and the Defendant upheld the termination.

11. The Plaintiff appealed a second time and LINA once again found the Plaintiff disabled and the claim was paid again for more than three years, well beyond the any occupation date. However, after reassignment of the claim in 2014 to a

different "Disability Claims Manager," LINA began a single-minded effort to terminate benefits.

12. In November, 2014, LINA arranged for Plaintiff to attend an "Independent Medical Evaluation" (IME) with Dr. Sheila Mohammed in Pace, Florida. The Plaintiff attended the IME and it was videotaped. Dr. Mohammed's examination was cursory and her report failed to consider medical evidence of record. The report also failed to evaluate all of the Plaintiff's well-documented medical conditions.

13. Based upon the IME report, LINA found that the Plaintiff no longer met the definition of disability as of January 28, 2015.

14. Plaintiff timely appealed the adverse decision on July 29, 2015. In her appeal, Plaintiff apprised LINA that Dr. Mohammed is an unreliable and compromised physician who is motivated by financial considerations and has admitted to committing felony fraud over a number of years for gain. The Plaintiff provided the Defendant with court documents including the Grand Jury Charges and the Plea Agreement executed by Dr. Mohammed.

15. LINA failed to make a timely decision on Plaintiff's appeal, which was due by September 12, 2015. No correspondence was received from LINA within the 45 days following the appeal to extend the deadline or to request additional

4

information from the Plaintiff. Accordingly, the claim was deemed exhausted as of September 12, 2015.

16. Despite being advised of Dr. Mohammed's plea of guilty to felony fraud, LINA indicated that it intended to give full faith and credit to her opinion.

17. Clearly the Plaintiff will not receive a full and fair review from a claim fiduciary which refuses to acknowledge that a doctor for hire to conduct reviews and IMEs, and who has been convicted of a felony for pecuniary gain, is not credible and not reliable.

18. Regarding Dr. Mohammed's veracity, in its Sentencing Memorandum the Attorney for the United States Government noted that Dr. Mohammed was "indicted for fraudulent conduct that took place over the course of four years and she pled guilty to said fraudulent conduct." Within days of her sentencing, she was found to have committed another type of fraud - bank fraud. The defendant's conduct shows that she still does not recognize that it is a crime to lie to third parties, be it the Internal Revenue Service or a financial institute <u>for personal gain</u>." (emphasis added)

19. Dr. Mohammed's review is not reliable nor is it due any credit, given these ongoing issues. Dr. Mohammed has been sentenced to the custody of the Florida Bureau of Prisons for 12 months and 1 day, followed by 2 years of supervised

release.

20. LINA engaged in bad faith in this single-minded pattern of making inconsistent decisions during the claim process based on the whims and desires of any particular adjuster and in continuing to rely up on the medical opinion of an admitted felon who has demonstrated a lack of reliability and credibility. The claim process has been abused.

21. Due to the lack of any monetary remedy afforded by the Employee Retirement Income Security Act at 29 U.S.C. §1001 *et seq* (hereafter ERISA) there is no incentive to avoid this abuse of the process absent an equitable relief remedy. The Plaintiff is precluded from asserting a claim for bad faith, punitive damages or mental anguish damages due to ERISA's preemption of such claims.

22. The fiduciary duties under ERISA require LINA to act with the utmost of good faith and in the interest of plan participants such as the Plaintiff. It may not act with a single-minded determination to terminate benefits and avoid demonstrating any consistent decision making. The Court may utilize equitable relief to remedy the abuse of the claim process.

23. At no point have the Plaintiff's conditions improved to the extent that she could return to work. The Plaintiff's symptoms continue to preclude consistent full-time work in any occupation earning 60% or more of the Plaintiff's wages

when she became disabled.

24. LINA further required the Plaintiff to file a claim for Social Security Disability benefits during the time when LINA had found the Plaintiff disabled. In fact LINA went so far as to provide "The Advocator Group" as a representative for the Plaintiff to urge that the Plaintiff was disabled from performing any occupation to the United States Government. LINA required the Plaintiff to assert that she was disabled from performing any occupation with reasonable continuity and continued to maintain that position until the Plaintiff was awarded Social Security Disability benefits. The Advocator Group followed this direction and made such assertions.

25. Now LINA disavows that the Plaintiff is disabled from performing any occupation and ignores the Social Security Administration findings of disability to suit its own purposes and to benefit the Defendant financially.

26. LINA has breached fiduciary duties in acting in a conflicted manner and is due to be estopped from asserting a different position than it asserted during the "administrative or claim procedure proceeding". Consistency in decision making is routinely overlooked by LINA and one claims adjuster's decision may easily conflict with another claims adjuster's decision in contravention of the fiduciary requirements of a claims administrator under ERISA. Consistent decision making

is required by ERISA and its regulations.

27. The Plaintiff, through counsel, sought evidence of a claims manual to ascertain any basis for consistent decision making with LINA's claim process. LINA has refused to produce its claims manual. The manual is not in the possession of the employer and is only in the possession of LINA. The manual is a plan document as it directs adjudication of the facts of the claim and directs plan interpretation.

28. LINA has assumed the duties of a "plan administrator" as to the retention and provision of the claims manual which is clearly utilized to adjudicate claims and constitutes an additional plan document. LINA is therefore a *de facto* plan administrator for purposes of providing the claims manual and/or is the responsible entity for providing the claims manual upon request.

29. LINA has refused to produce its claims manual and has refused to do so in many other claims as well. This allows LINA to further engage in an unfair and conflicted claims process with inconsistent decision making.

30. The Plaintiff seeks a statutory penalty against LINA for refusing to produce its claims manual which is utilized as a plan document.

31. The Plaintiff has exhausted all claim remedies. Also LINA has failed to make a timely decision and the claim has been deemed exhausted. Alternatively, further exhaustion of administrative remedies would be futile.

## COUNT I

32. The Plaintiff incorporates by reference all prior paragraphs of this complaint.

33. This Count is brought to enforce the Plaintiff's rights under the long term disability plan in question as permitted under 29 U.S.C.§1132(a)(1)(b) and it further seeks to recover benefits, interest and such equitable relief as may be recoverable under this code provision and under 29 U.S.C. §1132(g).

34. LINA wrongfully and in violation of its obligations under ERISA has denied long term disability to the Plaintiff and has engaged in a bad faith pattern and practice of paying the claim and then denying the claim without any evidence of improvement in the Plaintiff's condition. LINA has not performed a full and fair review.

35. Plaintiff has been denied her long term disability benefit and has been placed into financial distress as a result of having her benefit denied. The Plaintiff is unable to work and perform her own occupation or any occupation earning 60% more of her prior wages. The Plaintiff has not worked since November 16, 2009, and has been on Social Security Disability. LINA has breached the plan terms.

**WHEREFORE**, the Plaintiff demands judgment against LINA as follows:

a. For the sum of all past due long term disability benefits;

b. For reinstatement for Plaintiff's claim to all present and future long term disability benefits under the plan;

c. For interest on all past due benefits;

d. For an award of attorney's fees;

e. For this court to substitute claims administrator for the Plaintiff's claim at the expense of the Defendant for the duration of this claim.

## COUNT II

36. The Plaintiff incorporates by reference all previous paragraphs of this Complaint.

37. This Count seeks relief under 20 U.S.C. § 1132(a)(3). LINA was required under the law, including regulations, to perform a full a fair review of the Plaintiff's claim under ERISA consistent with the purposes requiring participants, such as the Plaintiff, to exhaust internal appeal procedures before filing an action in Court.

38. LINA's appeal process is defective as LINA does not evaluate evidence considered on the first review with any additional evidence of the Plaintiff. During the claim process it develops or seeks new evidence to support a pre-ordained decision to deny the claim.

10

39. LINA is also required to maintain a consistent decision making process by both the ERISA statute and the claim procedure regulation at 29 C.F.R. §2560.503-1. LINA has breached its fiduciary duty to maintain a consistent claim decision making process and has forced the Plaintiff to incur case expenses and attorney's fees to combat the unfairness during the claim process.

40. The Plaintiff therefore seeks equitable relief to place the Plaintiff in the position she should have been had there been a consistent claim decision making process. The Plaintiff requests a surcharge against LINA to do so. The Plaintiff further requests that another claims administrator be appointed in lieu of LINA to handle the remainder of this claim at the expense of LINA.

41. As a result of the breaches of fiduciary duty and violations of the applicable regulations and statutes, the Plaintiff's claim has been improperly determined and to the extent that other participants have been subjected to the same breaches of fiduciary duties, their claims have been improperly determined as well.

**WHEREFORE**, Plaintiff demands judgment in the form of equitable relief against LINA as follows:

    a. Removal of LINA as a fiduciary and/or "claims administrator" and appointment of another claim administrator agreeable to the Plaintiff with the expense of such claims administration to be paid by LINA;

b. Payment of all attorney's fees, case expenses and all other costs incurred by the Plaintiff during the claim process in connection with fighting against the inconsistent and unfair claims determination process utilized by LINA;

c. For an injunction and order that LINA produce its claims manual to all claimants within 30 days upon request and that LINA give notice to all claimants that it will reopen any claim determinations which have been affected by inconsistent claim determinations;

d. For reconsideration of the Plaintiff's disability claim;

e. For attorney's fees;

f. For other such equitable and appropriate relief as may be proper and just.

## COUNT III

42. The Plaintiff incorporates by reference all previous paragraphs of this Complaint.

43. This Count is brought pursuant to 29 U.S.C. § 1132(c).

44. The Defendant had an obligation as "any administrator" or as an entity assuming the duties of "any administrator", to comply with requests for information, which was required by law to be furnished under 29 U.S.C. § 1132(c).

Under 29 U.S.C. § 1029, the Secretary of Labor prescribes what documents must be furnished. Under 29 U.S.C. § 1133, the Secretary of Labor has legislative authority to prescribe regulations. The Secretary of Labor has determined that the claim manual is a document due to be provided as an instrument used to operate the plan. Under 29 C.F.R. § 2560.503-1, the participant is entitled to have reasonable access to all information relevant to a claim for benefits. This would include a claim manual. LINA has breached the duty to provide the claim manual.

45. On or about February 2, 2015, and July 29, 2015, the Plaintiff requested in writing the claim manual. This document was known to LINA and is believed to be solely in the possession of LINA. The Plaintiff needed the claim manual to know what further information to submit to the Defendant and understand how LINA was administering the Plaintiff's claim. The claim determinations were inconsistent.

46. LINA has not responded to the above request in violation of the above statutes and duties.

    **WHEREFORE**, the Plaintiff demands judgment against LINA as follows:

    a.    For an award of penalties of $110.00 per day for each day LINA did not respond to information for which they were required to respond;

    b.    For an award of attorney's fees;

c.    For such equitable or other further relief as may be just and proper under 29 U.S.C. § 1132(c).

Respectfully Submitted,

*David P. Martin*

David P. Martin
(ASB-3500-M68D)
**The Martin Law Group, LLC**
**Attorney for Plaintiff**
P.O. Box 20087
Tuscaloosa, AL 35402
Phone (205) 343-1771
Facsimile (205) 343-1781
davidpmartin@erisacase.com

**Plaintiff's Address:**

Katherine Reed
c/o The Martin Law Group, LLC
P.O. Box 20087
Tuscaloosa, AL 35402

**Defendant's Address:**

Life Insurance Company of North America
C/O CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL  36104

14